983 F.2d 1069
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Robert DILLARD, Defendant-Appellant.
 No. 91-2339.
 United States Court of Appeals, Sixth Circuit.
 Dec. 8, 1992.
 
 Before BOYCE F. MARTIN, JR. and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant, Michael Robert Dillard, appeals the district court's denial of his motion to suppress his confessions, alleging that they were involuntary. Defendant was convicted of armed bank robbery in violation of 18 U.S.C. § 2113(a)(d) and of use of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1).
 
 I.
 
 2
 Defendant Dillard was arrested February 28, 1991 and charged with bank robbery. Dillard was with his mother, Barbara Dillard, at an appliance store at the time of his arrest. The police searched Mrs. Dillard's purse and found a red dye-stained $20 bill. The money stolen in the bank robbery had a red dye on it. Dillard and his mother were taken in separate vehicles to the Dearborn Police Station, arriving at the police station about 5:30 p.m.
 
 
 3
 The agents first questioned Mrs. Dillard in a closed room for about an hour. Dillard testified at the suppression hearing that before his mother was questioned, he had seen her and said that he would "try to get her out." Mrs. Dillard was allowed to leave after her questioning.
 
 
 4
 The agents then interviewed Dillard. He was told his mother was fine, and he asked for and received a glass of water. About 7:30 p.m., Dillard waived his Miranda rights in written form in the presence of FBI agents Genide and Chuda. He did not request an attorney.
 
 
 5
 In the interview that followed, Dillard provided a written statement admitting to having robbed the Michigan National Bank three days earlier. He also admitted to having used a .22 caliber revolver during the robbery. Dillard reviewed the written statement which the agents had prepared, made a few corrections, and signed it. Dillard stated both in his written statement and at the suppression hearing that he was never threatened, coerced or promised anything in return for confessing. He also said at the suppression hearing that neither Agent Genide nor Agent Chuda had threatened to treat his mother badly if he refused to confess. Dillard, however, stated that he provided the statement solely to ensure his mother's release. After his initial interview with the police, Dillard learned that his mother had already been released.
 
 
 6
 The next day Dillard was taken to the Federal Building in Detroit. Agents Chuda and Genide spoke again to Dillard. He was read his Miranda rights, and he executed a written waiver of them about 12:30 p.m. He again signed a written statement confessing to the bank robbery, explaining how he obtained the firearm, and identifying an alleged accomplice, Cedric Riley.
 
 
 7
 One hour later, Dillard was questioned by two different agents at FBI headquarters. For the third time in eighteen hours, he executed a written waiver of his rights. He again provided a written statement concerning his and Cedric Riley's involvement in the bank robbery. Dillard did not request to speak to an attorney at any time. At the suppression hearing, Dillard admitted that the agents had made no promises or threats to obtain these confessions. He stated that he knew that his mother had been released, but claimed that he confessed the second and third time to prevent his mother from being arrested again.
 
 
 8
 On March 5, 1991, a federal grand jury returned a two-count indictment for armed robbery and for the possession of cocaine with intent to distribute. On March 20, the grand jury returned a superseding indictment adding the charge of using and carrying a firearm during and in relation to a crime of violence.
 
 
 9
 On April 16, 1991, Dillard filed a motion to suppress the confessions. On May 9, 1991 after a hearing, the district court denied the motion. The district court did not find the confessions to be coerced, and held, alternatively, even if the first confession had been coerced, the second and third ones were not. All three confessions were admitted against Dillard at trial. Dillard was convicted on August 20, 1991 on the bank robbery charge and firearm charge. Dillard was sentenced to 46 months for bank robbery and 5 years for the firearm offense to be served consecutively. Dillard filed a timely appeal on December 2, 1991.
 
 II.
 
 10
 We must first decide whether the district court was correct in denying Dillard's motion to suppress his first confession. The government argues that the circumstances were not coercive, and the confession was voluntary.
 
 
 11
 There are three factors to determine whether a confession was, in fact, voluntary: (1) whether the police used coercive activity in obtaining the confession; (2) whether the coercion was sufficient to overbear the will of the accused; (3) whether the accused's will was overborne because of the coercive police activity in question. McCall v. Dutton, 863 F.2d 454, 459 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989).
 
 
 12
 In determining the voluntariness of a confession, it is necessary to examine the totality of the circumstances surrounding the confession, including the characteristics of the accused, the details of the interrogation, and their psychological impact on an accused's ability to resist pressures to confess. United States v. Brown, 557 F.2d 541, 546 (6th Cir.1977); Cooper v. Scroggy, 845 F.2d 1385, 1390 (6th Cir.1988); United States v. Wilson, 787 F.2d 375, 380-81 (8th Cir.), cert. denied, 479 U.S. 857 (1986). The critical distinction is between self-direction and compulsion. Culombe v. Connecticut, 367 U.S. 568, 602 (1961). Any questioning by police officers which, in fact, produces a confession which is not the product of a free intellect renders that confession inadmissible. United States v. Murphy, 763 F.2d 202, 208 (6th Cir.1985), cert. denied, 474 U.S. 1063 (1986).
 
 
 13
 This court has held that after examining the totality of the circumstances, a confession was coerced because the defendant confessed out of an overwhelming fear that he would be beaten by the police. Brown, 557 F.2d at 548. The factors the court examined were: (1) the manifest hostility of the police toward the accused who was wanted for the shooting of a police officer; (2) the accused's age; (3) his physical state and emotional condition at the time of confession; (4) the closeness in time of the confession to a violent arrest; (5) the expressed fears that he would be beaten by the police; (6) the inherent coerciveness of the back seat of a patrol car as a setting for a confession; and (7) being struck by one of the officers at the time of the confession. Id.
 
 
 14
 This court has also found that a confession was coerced when it was conditioned on the defendant's belief that he would be released because the officers had promised him leniency if he talked. Williams v. Withrow, 944 F.2d 284, 289 (6th Cir.1991), cert. granted, 112 S.Ct. 1664 (1992). However, this court found no coercion when a defendant was handcuffed, placed on the ground, and surrounded by numerous police officers who yelled and pointed weapons at him. McCall v. Dutton, 863 F.2d at 459. There was no coercion in McCall because there was no evidence that the officers used the weapons in any way to force a confession out of the defendant. Id.
 
 
 15
 In the present case, Dillard states he confessed in order to release his mother from police custody. Dillard alleges that the police arrested him in a public place, pushed him to the ground, arrested his mother for a crime she did not commit, told him that they were taking his mother to jail, denied his mother's requests for medication and a phone call to her husband, and placed his mother in a small holding cell. Dillard alleges that he was under the impression that if he cooperated and confessed his mother would be released from jail. These events, perhaps, could be seen to be sufficiently disturbing to overcome Dillard's will if the police had fabricated his mother's arrest. However, it does not appear that the agents engaged in any intentional coercion. The police had probable cause to arrest Dillard's mother because she was found with the red-dyed money taken from the bank and could have been an accomplice in the crime. Even if Dillard confessed in order to ensure his mother's release, this does not violate the Fifth Amendment if there was no police misconduct. Guilt and remorse don't amount to coercion. If a defendant's conscience compels him to confess so that an innocent person will not be charged with the crime he has committed, then the confession is voluntary in the sense that it is a result of the defendant's decision that it is more important to secure the release of an innocent person than to exercise his right to remain silent. The present case is distinguishable from Williams v. Withrow, because the police did not promise defendant Dillard that his mother would be released if he confessed, whereas the defendant in Withrow was promised that he would be released if he confessed. Defendant Dillard merely presumed that his mother would be released if he confessed, but this presumption does not amount to coercion as long as Dillard's mother's arrest was not fabricated. The police had a legitimate reason to bring Mrs. Dillard into custody: the possession of stolen money.
 
 
 16
 Moreover, defendant did not immediately confess at the police station in order to secure his mother's release when they arrived there at 5:30 p.m., but waited until 7:30 p.m. that night before confessing. As in McCall, there is no evidence that the police or the agents in the present case went beyond their line of duty and were using their actions in order to obtain a confession. Dillard, himself, admits that the agents made no threats or promises in regard to his mother.
 
 
 17
 Thus, defendant has failed to show that the police activity was designed to bring about a coerced confession. Dillard was acting under free will, even if he made a conscious decision to confess in order to release his mother. Thus, Dillard's confession meets the test for voluntariness. The district court is affirmed on this issue.
 
 III.
 
 18
 Even if the first confession was coerced, we find, in the alternative, that the second and third confessions were not obtained under coercive circumstances. An involuntary first confession does not perpetually bar the confessor from making a usable one under new circumstances. United States v. Daniel, 932 F.2d 517 (6th Cir.), cert. denied, 112 S.Ct. 252 (1991). When a prior statement is actually coerced, the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether coercion has carried over to the subsequent confession. Oregon v. Elstad, 470 U.S. 298, 310 (1985).
 
 
 19
 In circumstances similar to those of the present case, this court found that the initial coercion did not carry over into subsequent confessions. Daniel, 932 F.2d at 521. In Daniel there was no effort made to continue any questioning the same night. Interrogation occurred in different places and by different interrogators. Officers gave the defendant Miranda warnings each time, and the defendant significantly elaborated his statement the second time. This court felt that these factors, taken together, showed a knowing and intelligent waiver of the rights to remain silent and consult counsel before making a statement. Id.
 
 
 20
 In the present case, Dillard was questioned a second time the next day at the Federal Building instead of at the police station. For the third questioning one hour later, he was taken to FBI Headquarters and interviewed by two different agents. Each time, agents read Dillard his Miranda rights, and he executed a written waiver. In the second interview, Dillard expanded on his first confession by explaining how he had obtained his firearm and revealing the identity of an alleged accomplice. Dillard claims that coercion still existed because he believed that by confessing, he was keeping his mother out of jail. As previously discussed, his decision to confess in order to ensure that his mother not be implicated does not constitute coercion because there is no evidence of police misconduct. Under the rationale of Daniel, we find that even if the initial confession was coerced, the coercion did not carry over to the second and third confessions.
 
 
 21
 For these reasons, the district court did not err in denying defendant's motion to suppress. The decision of the district court is hereby AFFIRMED.